## YOUNG v. UNITED STATES.
### A. D. 1865.

District Court, S. D. Texas, Galveston Division.
July 20, 1948.

Armstrong, Barker, Bedford & Smith, and J. K. Smith, all of Galveston, Tex., for libellant.

Brian S. Odem, U. S. Atty., and Newton M. Crain, Jr., both of Houston, Tex., for respondent.

KENNERLY, District Judge.

Libellant, the Third Mate on the SS "Marina", sues the Government of the United States for overtime alleged to be owing him for work between 5:00 P.M. and 8:00 A.M. on such Steamship. At the trial, the period of time was stated to be from February 19, 1945, to October 12, 1945, while such Steamship was in dry dock. Libellant also sues for double pay under Title 46 U.S.C.A. § 596. The Government denies that Libellant worked overtime during the period alleged, says that Libellant has been paid all time and overtime to which he is entitled and has signed a release accordingly, and denies that he is entitled to double pay under Section 596.

Findings of Fact.

(a) Libellant signed on the SS "Marina" on or about December 28, 1944, for a foreign voyage. On or about January 16, 1945, the "Marina" was damaged by a mine off the coast of France and was beached. Afterwards, she was on or about February 19, 1945, placed in dry dock at Rouen, France, where she remained until on or about October 12, 1945.

(b) On arrival in dry dock, the Master notified the Chief Officer, Second Mate, and Third Mate (Libellant) that he wanted one officer on duty on the vessel at all times, but that they could arrange among themselves how they should do so. The officer on duty was not required to remain awake, but was allowed, if desired, to be in his bunk, subject to call. The three deck officers arranged among themselves that one officer was to be on duty in that fashion for twenty-four (24) hours and off for forty-eight (48) hours. No overtime slips were turned in to the Master and certified by him.

(c) Libellant has been paid $7392.-44 for 13 months and 19 days, straight time and overtime, which is fair, ample and adequate compensation.

(d) Libellant offered in evidence a compilation purporting to show his overtime. About this compilation, Counsel for the Government says in his brief:—

"After the passage of many months in drydock, the officers began to yearn for the 'shores of home' and as their restlessness increased, Young, at least, conceived the idea of demanding overtime for all the time spent aboard the Marina. Then, and not until then, he sat down to consider the matter of proof. Since it was then impossible to recall when he had actually been aboard the vessel, he took the Ship's Log, and proceeded with one pencil to go through and initial the entires in the log for two out of each three days that the vessel was in drydock at Rouen. That this is true is readily to be seen from a perusal of the Log. It takes no handwriting expert to note that the initials 'SMY' appearing on the pages of the Log seem to have been written with a light pencil in each instance, whereas the entries vary in texture and quality from day to day, sometimes being in light pencil and sometimes in heavy pencil, etc., but rarely in the same type of pencil markings as the initials. From the Log, then, Young sat down and prepared his socalled overtime sheet, designed to indicate he had worked on two out of every three days they lay at Rouen, taking the precaution at the same time to prepare similar sheets for the other

two officers, so that there would be no overlap. To further substantiate this view of the facts, it is pointed out that Young testified that he knew nothing of a barrage balloon having been stolen from the ship. Yet, on the page of the Ship's Log for July 10, 1945, beneath his initials appears a notation to the effect that such a balloon was in fact missing. Likewise, he testified that all he knew about carpenter's tools and supplies being stolen from the ship was a rumor that he had heard. However, on the page in the Log for July 9, 1945, appears the notation, opposite his initials, to the effect that those tools had been discovered—presumably by him—to be missing. His so-called overtime sheet shows that he claims to have performed several hours of overtime work on each of those days, also."

I find that Libellant has failed to prove his case in his suit for overtime.

(e) There is in evidence four large sheets, called Shipping Articles, which were signed by Libellant when he returned to New York and was discharged or "signed off" before the Shipping Commissioner. It is signed also by the Master. Just above Libellant's signature appear these words:—

"We, the undersigned seamen, do hereby, each one for himself by our signatures herewith given in consideration of settlements made before the shipping commissioner, release the Master and owners from all claims for wages in respect of this voyage or engagement, and I, the Master, do also release each of the undersigned seamen from all claims, in consideration of this release signed by them."

Libellant was in no way under duress when he signed this Release, nor was he in any way misled. He fully understood what he was about and is bound by his acts.

### Conclusions of Law.

I conclude that Libellant is not entitled to recover the overtime sued for, nor is he entitled to recover double pay under Title 46 U.S.C.A. § 596.

Let appropriate Decree be drawn and presented.